**UNITED STATES DISTRICT COURT OF
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

--------------------------------------------------------------------------------

| | |
|---|---|
| MIAMI VALLEY FAIR HOUSING CENTER | **CIVIL ACTION 3:19-CV-166** |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| OAK CREEK TERRACE, INC.; | |
| CARING PLACE HEALTHCARE GROUP, LLC; | |
| MASONIC HEALTH CARE, INC.; | |
| THE OHIO MASONIC HOME; | |
| THE OHIO MASONIC HOME BENEVOLENT ENDOWMENT FOUNDATION, INC.; | |
| CSL MIAMI, LLC; | |
| CAPITAL SENIOR LIVING PROPERTIES 3, INC.; | |
| CAPITAL SENIOR LIVING PROPERTIES, INC.; | |
| CAPITAL SENIOR LIVING, INC. | |
| Defendants. | |

--------------------------------------------------------------------------------

Plaintiff, MIAMI VALLEY FAIR HOUSING CENTER ("Plaintiff" or "MVFHC"), by and through its undersigned counsel, EISENBERG & BAUM, LLP, and RELMAN, DANE & COLFAX PLLC, for its Complaint against Defendants, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff, Miami Valley Fair Housing Center (MVFHC), is a non-profit organization whose mission is to eliminate housing discrimination and ensure equal housing opportunities for all people throughout the state of Ohio and nationally. Defendants own and/or

1

operate numerous nursing homes and assisted living residences throughout Ohio and nationwide. Defendants made statements to Plaintiff refusing to provide auxiliary aids and services necessary to achieve effective communication with prospective deaf residents who use ASL. Therefore, Plaintiff alleges that Defendants' conduct amounts to discrimination based on disability.

2.      American Sign Language ("ASL") is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages. ASL is best thought of as a foreign language used by American deaf people, with its own grammar and syntax. Deaf individuals are often educated in Deaf schools and grow up in culturally Deaf environments. As a result of both physical and environmental factors, deaf individuals frequently have great difficulty achieving a working command of spoken or written English, whereas, deaf individuals are often able to communicate complex thoughts and opinion with great ease in ASL. Therefore, ASL interpreters are often necessary for the great majority of deaf individuals receiving medical, nursing home, and assisted living and rehabilitation care when that care involves complicated information, lengthy communications, or when the individual has other conditions that make seeing or communicating through other means more difficult.

3.      MVFHC utilized fair housing testers ("Testers") to determine whether Defendants would supply an ASL interpreter for a deaf resident if requested or when necessary. When the Testers from MVFHC contacted Defendants' nursing home facilities, the Testers represented that their elderly deaf relatives are looking for prospective residences at the Defendants' facilities. The Testers specifically inquired whether their elderly deaf relatives would be provided interpreters when needed. Testers were told by Defendants' representatives or administrators that the deaf resident must pay for his/her own interpreters, or use writing on whiteboards to communicate. Written communication may not be an effective form of communication in certain scenarios,

2

where deaf individuals would have difficulty understanding complex concepts or terminology in English. For example, a deaf individual may need sign language interpreters to effectively communicate during medical or social assessment, activities planning, intake interviews, medical or social screening, physician/nurse consultations, drug prescriptions, recreational activities, therapy appointments, psychological services, discharge discussions, and obtaining consent for various legal forms such as DNR documentation, or power-of-attorney or proxy designation.

4. In the context of residential medical care provided to elderly individuals, the outright refusal to provide an ASL interpreter for any situation will result in ineffective communication for elderly deaf residents. Defendants thus discriminate against elderly deaf residents and prospective residents by failing and/or refusing to provide qualified American Sign Language interpreters or other auxiliary aids and services to ensure effective communication.

5. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and to implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' residential and health care services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.; Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12181 et seq.; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 et seq.; and any regulations implementing the foregoing statutes.

## THE PARTIES

6.      Plaintiff MVFHC is a non-profit organization with its principal office located at 505 Riverside Drive, Dayton, OH 45405.

7.      MVFHC is a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities throughout Ohio by eliminating housing discrimination and creating open, accessible, and inclusive communities.

8.      To this end, MVFHC provides various services, including education, advocacy, outreach to government officials to improve fair housing laws, and all appropriate and necessary action to ensure that the Federal/State Fair Housing laws and anti-discrimination laws are enforced throughout Ohio and nationwide.

9.      MVFHC provides resources and assistance to individuals, engages in fair housing enforcement activities, and engages in demonstrating policy initiatives that further the MVFHC's mission, including the publication and dissemination of reports and educational materials.

10.     MVFHC employs individual "Testers" who pose as prospective renters, home buyers, residents, and the like for the purpose of obtaining information about the conduct of local governments, landlords, real estate agents, companies, and others to determine if housing discrimination is taking place.

11.     MVFHC expended significant staff time and other resources to investigate and respond to Defendants' discriminatory practices, which diverted resources away from other MVFHC activities.

12.     Defendants' discriminatory rental practices frustrated MVFHC's mission to ensure that all people have equal access to housing opportunities in Ohio by, among other things, refusing

to provide necessary auxiliary aids and services and therefore making nursing home and assisted living facilities inaccessible to deaf individuals.

13.     Defendant OAK CREEK TERRACE, INC. is a for-profit corporation incorporated in Ohio, with principal offices in Cincinnati, Hamilton County, Ohio. It operates a nursing home facility under the trade name OAK CREEK TERRACE NURSING & REHAB CENTER, whose facilities are located in 2316 Springmill Road, Kettering, OH 45440. Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

14.     Defendant CARING PLACE HEALTHCARE GROUP, LLC is a Domestic Limited Liability Company with principal offices in Cincinnati, Hamilton County, Ohio. Upon information and belief, Defendant owns and/or operates OAK CREEK TERRACE NURSING & REHAB CENTER (2316 Springmill Road, Kettering, OH 45440), and is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

15.     Defendant MASONIC HEALTH CARE, INC. is a not-for-profit corporation formed under the laws of Ohio, with principal offices in Springfield Township, Ohio. It operates a nursing home facility under the trade name SPRINGFIELD MASONIC COMMUNITY, whose facilities are located in 2655 W National Road, Springfield, OH 45504. Defendant's stated purpose is "to provide and maintain" a home for the care of the aged, and to provide "continuing care retirement services, housing, healthcare, adult day care, respite care." Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the

Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

16.     Defendant THE OHIO MASONIC HOME is a not-for-profit corporation formed under the laws of Ohio, with principal offices in Cincinnati, Hamilton County, Ohio. Upon information and belief, Defendant owns and/or operates SPRINGFIELD MASONIC COMMUNITY (2655 W National Road, Springfield, OH 45504). Defendant's stated purpose is "to provide and maintain a home for the care and protection of aged, infirm and distressed". Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

17.     Defendant THE OHIO MASONIC HOME BENEVOLENT ENDOWMENT FOUNDATION, INC. is a not-for-profit corporation formed under the laws of Ohio, with principal offices in Springfield Township, Ohio (2655 W National Road, Springfield, OH 45504). Upon information and belief, Defendant operates SPRINGFIELD MASONIC COMMUNITY. Defendant's stated purpose is for "providing and maintaining a home or otherwise provide for the care and support of aged, infirm . . . maintaining, developing, increasing and extending the facilities and services of the Ohio Masonic Home and any tax exempt subsidiary of the home, so as to provide broader care and support to aged infirm individuals who are either within the Masonic Fraternity or within the State of Ohio." Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

18.     Defendant CSL MIAMI, LLC is a Foreign Limited Liability Company registered in Ohio, with a principal place of business in 14160 Dallas Parkway, Suite 300, Dallas, Texas

75254-4383. It operates a nursing home facility under the trade name THE WELLINGTON AT DAYTON, whose facilities are located in 2656 WEST ALEX BELL, DAYTON, OH 45459. Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

19.     Defendant CAPITAL SENIOR LIVING PROPERTIES 3, INC. is a Foreign For-Profit Corporation, incorporated in Texas, authorized to transact business in Ohio, with a principal place of business in 14160 Dallas Parkway, Suite 300, Dallas, Texas 75254-4383. It owns and/or operates THE WELLINGTON AT DAYTON, whose facilities are located in 2656 WEST ALEX BELL, DAYTON, OH 45459. Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

20.     Defendant CAPITAL SENIOR LIVING PROPERTIES, INC. is a Foreign For-Profit Corporation, incorporated in Texas, authorized to transact business in Ohio, with a principal place of business in 14160 Dallas Parkway, Suite 300, Dallas, Texas 75254-4383. It owns and/or operates THE WELLINGTON AT DAYTON, whose facilities are located in 2656 WEST ALEX BELL, DAYTON, OH 45459. Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

21.     Defendant CAPITAL SENIOR LIVING, INC. is a Foreign For-Profit Corporation, incorporated in Texas, authorized to transact business in Ohio, with a principal place of business in 14160 Dallas Parkway, Suite 300, Dallas, Texas 75254-4383. It owns and/or operates THE WELLINGTON AT DAYTON, whose facilities are located in 2656 WEST ALEX BELL,

7

DAYTON, OH 45459. Upon information and belief, Defendant is a recipient of federal financial assistance and is subject to the requirements of the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, Title III of the ADA, and Section 1557 of the ACA.

## JURISDICTION & VENUE

22.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under federal law, as well as 42 U.S.C. § 3613(a) with respect to claims arising under the Fair Housing Act.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

Facts surrounding MVFHC Testing

24.     From July through September of 2017, MVFHC began investigations of several nursing home facilities including those of the Defendants. The investigation involved engaging Testers who made telephone calls and on-site visits to Defendants' facilities. The Testers, operating under aliases, posed as family members of elderly individuals seeking to become a resident of the Defendants' nursing home/assisted living facilities. Testers were instructed to explain to the Defendants' representatives that their relative is deaf and primarily uses ASL. Then, the Testers were instructed to ask the Defendants how they would deal with the needs of the deaf resident to achieve effective communication, specifically for medical assessments and other complex communication, and whether they would provide auxiliary aids and services including ASL interpreters.

25. Audio recordings were made of all contacts between the Testers and Defendants' representatives.

## Factual Allegations Against Defendants OAK CREEK TERRACE, INC. and CARING PLACE HEALTHCARE GROUP, LLC regarding their facility OAK CREEK TERRACE NURSING & REHAB CENTER

26. On July 7, 2017, Tester D.R., using an alias Don R., called Defendants' facility OAK CREEK TERRACE NURSING & REHAB CENTER using a Video Relay Service and was put through to Defendants' representative named Tracy. Tester Don R. represented that he is deaf and calling through a Video Interpreter. Tester D.R. inquired about the prospective placement of his Uncle Charles, who is also deaf. Tester D.R. explained that Uncle Charles would require a certified ASL interpreter on an intermittent basis, for example, for medical assessments, making healthcare decisions and other on-site medical consultations. Tester also inquired whether Defendants' facility would provide hard-wired internet connection, rather than Wi-Fi, for Uncle Charles to use video relay service. Tracy informed D.R. that she would call back with more information regarding his questions after checking with the administrator/supervisor, Alicia. [1739RA IP Relay Test phone contact form – test ID 2835]

27. On July 11, 2017, Tracy from Oak Creek Nursing and Rehab Center left a voice message for Tester D.R. on his phone, informing him that she had spoken with the administrator and determined that the Center cannot provide interpreters nor a landline connection. [IP Relay Test phone contact form – test ID 2835 – 4]

28. On July 28, 2017, Tester A.S., using an alias Anne R., called Oak Creek Nursing and Rehab Center. Tester A.S. introduced herself to Tracy as the daughter-in-law of Don R., who had communicated with Tracy on July 7, 2017 regarding Uncle Charles who is deaf. Tester A.S. specifically clarified that Uncle Charles is not asking for a 24/7 interpreter services, and that he

would need an interpreter for major medical issues, the initial medical assessment, and substantive social activities at the Center. Tracy once again explained that the Center cannot cover the costs for the internet nor any interpreters. Tracy added that assisted living facilities are not required to provide the same for residents, and that the Tester's family may need to find another facility that can provide for those needs.  [IP Relay Test phone contact form – test ID 2853 4]

### Factual Allegations Against Defendants MASONIC HEALTHCARE, INC., THE OHIO MASONIC HOME, and THE OHIO MASONIC HOME BENEVOLENT ENDOWMENT FOUNDATION, INC. regarding their facility SPRINGFIELD MASONIC COMMUNITY

29.     On August 15, 2017, Tester D.R., using an alias Don R., called Defendants' facility SPRINGFIELD MASONIC COMMUNITY using a Video Relay Service and was put through to Defendants' sales representative named Bryan Clayborn. Tester represented that he is deaf and calling through a Video Interpreter. Tester D.R. inquired about the prospective placement of his Uncle Charles, who is also deaf. Tester D.R. further explained that Uncle Charles would require a certified ASL interpreter on an intermittent basis (not on a 24/7 basis), for example, when getting medical assessments, communicating any changes made to his plans, or when communicating detailed, important information. Tester also inquired whether Defendants' facility would provide hard-wired internet connection, rather than Wi-Fi, for Uncle Charles to use video relay service. Bryan Clayborn informed Tester D.R. that he would call back after checking the relevant information. [IP Relay Test phone contact form – test ID 2840-8]

30.     On September 15, 2017, Tester M.W., using an alias Mandy, called Defendants' representative Bryan Clayborn. In a voicemail for Bryan, Tester M.W. introduced herself as Mandy, the daughter-in-law of Don R., the Tester who had communicated with Bryan on August 15, 2017 regarding Uncle Charles who is deaf. Tester M.W. stated that she had questions regarding whether Defendant would provide an interpreter for Uncle Charles.  On the same day, Bryan Clayborn returned M.W.'s call and responded that "interpreters are difficult here" and that they

10

had used whiteboards to communicate. Bryan Clayborn added that the Center does not have a formalized system for interpreters. [IP Relay Test phone contact form – test 2893 -1 & 2]

31.    On September 18, 2017, Tester M.W. visited Defendants' facility and met with Bryan Clayborn. During the visit, Tester M.W. again explained that Uncle Charles would need an ASL interpreter for communication, not on a 24/7 basis, but for initial medical assessments, medical assessments, and to participate in important social events at the facility. Bryan Clayborn replied that the deaf resident would have to pay for the interpreters, and that the facility would not provide one, nor does it have staff members who are licensed interpreters. Bryan further explained that provision of interpreters is not considered part of the Facility's duty, and that she may need to seek other areas that may have interpreter resources available. [1723B Rental Narrative Document]

### Factual Allegations Against Defendants CSL MIAMI, LLC; CAPITAL SENIOR LIVING PROPERTIES 3, INC.; CAPITAL SENIOR LIVING PROPERTIES, INC.; and CAPITAL SENIOR LIVING, INC. regarding their facility THE WELLINGTON AT DAYTON

32.    On July 10, 2017, Tester D.R., using the alias Don R., called Defendants' facility THE WELLINGTON AT DAYTON, using a Video Relay Service, and was put through to Defendants' representative named Crystal. Tester represented that he is deaf and calling through a Video Interpreter. Tester D.R. inquired about the prospective placement of his Uncle Charles, who is also deaf. Tester D.R. further explained that Uncle Charles would require a certified ASL interpreter on an intermittent basis, possibly once a week or once a month, for example, during medical assessments, communicating any serious changes made to his medical plans, or for any occupational therapy. Crystal responded that the facility would not be able to provide an interpreter and it would be the family's responsibility to arrange and pay for interpreters. [17I3 IP Relay Test phone contact form - test ID 2800 – 4]

33.    On August 3, 2017, Tester M.W. called Defendants' facility using an alias Miranda R. Tester M.W. was put through to Ron, the Sales and Marketing Director at the Defendants'

facility. Tester introduced herself as the daughter-in-law of Don R., who had communicated with the Defendants' representative Crystal on July 10, 2017 regarding Uncle Charles who is deaf. Tester M.W. stated that she had questions regarding whether Defendant would provide an interpreter for complicated communications and interactions between Uncle Charles and Defendants' staff such as medical assessments or for social events provided by Defendants. Ron expressed concern that if the facility provides an interpreter for Uncle Charles, then other residents would begin to make various demands upon the facility as well, and as such, it would make sense not to provide interpreters for just Uncle Charles. Ron added that he would get back to Tester M.W. after looking into the issue. [IP Relay Test phone contact form - test ID 2859 – 1]

34.    On August 4, 2017, Tester M.W. called Defendants' facility and was put through to Ron, the Sales and Marketing Director. Tester M.W. asked whether the facility would provide an interpreter for on-site or in-house medical assessments/consultations as well as for social events organized at the facility where it would require complex communication. Ron responded that the family or the Uncle himself would need to pay for the interpreter. Tester informed Ron that medical providers provide interpreters for Uncle Charles free of cost, and Ron stated that "he couldn't imagine that the doctor pays for it". Ron clarified again that the facility would not be paying for interpreters. [IP Relay Test phone contact form - test ID 2859 – 5]

35.    On August 4, 2017, Ron, the Sales and Marketing Director at Defendants' facility called Tester M.W. and left a voicemail. Ron asked if Tester M.W. would serve as an interpreter for Uncle Charles during the social events and medical communications. Ron suggested that Tester M.W. visit the facility to discuss in-person about the requests made for an interpreter and whether the facility was the most appropriate place for Uncle Charles. [IP Relay Test phone contact form - test ID 2859 – 6]

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT AGAINST ALL DEFENDANTS

36.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

37.     This action is brought to enforce the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 et seq.

38.     Each of the Defendants own and/or lease dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

39.     The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

40.     Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

41.     Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

42.     Plaintiff's Testers, on behalf of their fictitious deaf family member, requested and were denied the reasonable accommodation of having a qualified ASL interpreter, and thus, were denied access and an opportunity to participate, use, and enjoy services provided by Defendants' facilities that are connected to their dwellings and which equally situated hearing residents are able to enjoy.

13

43.     Each of the Defendants discriminated on the basis of disability, in violation of the above-cited provisions of the FHA.

44.     Each of the Defendants violated the FHA by, inter alia, denying Plaintiff's Testers' requests for the provision of a qualified sign-language interpreter and thereby denying their fictitious deaf family members, on whose behalf the Testers were inquiring, access to services, programs or activities provided by Defendants in connection to their facilities. Each of the Defendants violated the FHA by, inter alia, adopting, stating, and advertising their policy or practice of refusing to provide qualified sign-language interpreters to any person requesting such accommodations in order to reside at Defendants' facilities.

45.     Upon information and belief, Defendants' refusal to offer ASL interpreter services is the result of a policy or practice of Defendants, and Defendants are deliberately indifferent to the right of a deaf individual to have an equal opportunity to benefit from Defendants' services.

46.     Regardless of whether the statements made by Defendants were intended to indicate any preference, limitation, or discrimination based on disability, an ordinary listener would understand their statements to indicate a limitation, preference, or discrimination because of the disability of the proposed occupants. These statements were made in the course of advertising and marketing the Defendants' dwelling units to potential applicants. They had the effect of infringing on the rights of people with disabilities.

47.     Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i), has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

48.     Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the FHA, 42 U.S.C. § 3613(c).

## COUNT II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT AGAINST ALL DEFENDANTS

49.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

50.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendants' conduct.

51.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendants' conduct.

52.     At all times relevant to this action, each of the Defendants received federal financial assistance, including Medicare and/or Medicaid grants and/or reimbursements, housing grants, state and federal program grants, and have been principally engaged in the business of providing health care. Therefore, Defendants' facilities and services are "a program or activity" receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

53.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

54.     Defendants' actions constitute discrimination, solely on the basis of disability, by denying meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

55.     Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of

15

achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

56.     Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, healthcare providers "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question. . . . For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision." 45 C.F.R. § 84.52(d).

57.     Upon information and belief, Defendants' refusal to offer ASL interpreter services is the result of a policy or practice of Defendants, and Defendants are deliberately indifferent to the right of a deaf individual to have an equal opportunity to benefit from Defendants' services.

58.     The Rehabilitation Act extends standing and relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2). Plaintiff is an aggrieved person as defined by Section 794a(a)(2) of the Rehabilitation Act. As a result of Defendants' actions alleged above, Plaintiff has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

59.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct and deliberate indifference, including the diversion of its resources and frustration of its mission, as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

60.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will continue to occur and continue to frustrate Plaintiff's mission. Therefore, Plaintiff is entitled to injunctive relief.

61.     Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

**COUNT III: VIOLATIONS OF TITLE III**
**OF THE AMERICANS WITH DISABILITIES ACT AGAINST ALL DEFENDANTS**

62.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

63.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181 et seq. has been in full force and effect and has applied to Defendants' conduct.

64.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

65.     Each of the Defendants own, lease, and/or operate a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

66.     Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

67.     Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

68.     Federal regulations implementing Title III of the ADA provide that a public accommodation "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

69.     Federal regulations implementing Title III of the ADA provide that "A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 36.303(c)(2).

70.     Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

71.     Pursuant to 28 C.F.R. § 36.202(b), "[a] public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 28 C.F.R. § 36.202(b).

72.     Each of the Defendants discriminated on the basis of disability, in violation of the above-cited provisions of the ADA and its implementing regulations.

73.     As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will continue to occur and continue to frustrate Plaintiff's mission.

74.     Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## COUNT IV: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

75.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

76.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("ACA") and its implementing regulations 45 C.F.R. Part 92 et seq. have

18

been in full force and effect and applied to the Defendants' conduct. 42 U.S.C. § 18116; 45 C.F.R. Part 92 et seq.

77.     The ACA, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

78.     At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid grants and/or reimbursements, housing grants, state and federal program grants, and have been principally engaged in the business of providing health care, and were principally engaged in the business of providing health care. Therefore, each of the Defendants are engaged in a health program or activity receiving federal financial assistance, and therefore, subject to the ACA pursuant to 42 U.S.C. § 18116(a).

79.     Pursuant to Section 1557 of the ACA "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. §18116.

80.     Pursuant to 45 C.F.R. §92.202, "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR 35.160 through 35.164. Where the regulatory provisions referenced in this section use the term 'public entity,' the term 'covered entity' shall apply in its place." 45 C.F.R. § 92.202.[1]

---

[1] 28 C.F.R. § 35.160 "(b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. (2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication

81.     Pursuant to 45 C.F.R. § 92.205, "[a] covered entity shall make reasonable modifications to policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability . . . the term reasonable modifications shall be interpreted . . . as set forth in the ADA Title II regulation." 45 C.F.R. § 92.205.

82.     Pursuant to 45 C.F.R. § 92.209, "[a] covered entity shall not exclude from participation in, deny the benefits of, or otherwise discriminate against an individual or entity in its health programs or activities on the basis of the race, color, national origin, sex, age, or disability of an individual with whom the individual or entity is known or believed to have a relationship or association." 45 C.F.R. § 92.209.

83.     As set forth above, each of the Defendants discriminated against deaf individuals, on the basis of disability, in violation of the ACA and its implementing regulations. Plaintiff has been injured as a result of Defendants' discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

84.     Plaintiff is therefore entitled to injunctive relief, as well as compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

85.     Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a) and/or common law.

---

involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. (c)(1) A public entity shall not require an individual with a disability to bring another individual to interpret for him or her. (2) A public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication." 28 C.F.R. § 35.160 (emphasis added).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a.     Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have discriminated in violation of The Fair Housing Act ("FHA"), 42 U.S.C. § 3602; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title III of the Americans with Disabilities Act (ADA); and Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

b.     Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c.     Order Defendants:

i.     to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against deaf or hard of hearing individuals by failing to provide effective communication;

ii.     to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii.     to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign

language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

v. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vi. to train all their employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the FHA, Rehabilitation Act, ADA, and ACA.

vii. to train all their employees, staff, and other agents on a regular basis about Defendants' policy regarding how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals; and

viii. to implement a program of testing Defendants' employees, staff, and other agents to determine whether they are complying with the requirements of the FHA, Rehabilitation Act, ADA, and ACA.

d. Award to Plaintiff:

i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act, the FHA, and ACA;

ii. Punitive damages pursuant to the FHA;

iii. Reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act, the ADA, the FHA, and ACA;

22

    iv.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v.    Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: June 3, 2019

                                    Respectfully submitted,

                                    By:

Andrew Rozynski, Esq.
(*seeking admission pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Main: (212) 353-8700
Fax: (212) 353-1708
*Attorneys for Plaintiff*

Stephen M. Dane, Esq. (0013057)
Relman, Dane & Colfax PLLC
312 Louisiana Avenue
Perrysburg, Ohio 43551
419-873-1814
sdane@relmanlaw.com

*Attorneys for Plaintiff*