## SETTLEMENT AGREEMENT

WHEREAS, Plaintiff Miami Valley Fair Housing Center, Inc. ("Plaintiff" or "MVFHC") filed a complaint against The Ohio Masonic Home, The Ohio Masonic Home Benevolent Endowment Foundation, Inc., and Masonic Health Care, Inc. (collectively, "Defendants") in the United States District Court Case of the Southern District of Ohio No. 3:19-cv-166 on June 3, 2019 (the "Action") concerning a certain senior living facility managed by Defendant Masonic Health Care, Inc.;

WHEREAS, in the Action, Plaintiff alleged, among other things, that Defendants discriminated against Plaintiff on the basis of disability in violation of the Federal Fair Housing Act ("FHAA"), 42 U.S.C. §3602 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 *et seq.*; Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12181 *et seq.*; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 *et seq.*;

WHEREAS, Plaintiff and Defendants (collectively, the "Parties" and each a "Party") wish to amicably and finally resolve the claims raised by Plaintiff in the Action, according to the terms set forth in this Settlement Agreement ("Agreement"), as a compromise to avoid the cost and uncertainty of litigation;

WHEREAS, Defendants have denied the allegations of wrongdoing and liability as set forth in the Action, and by entering into this Agreement do not admit that they have engaged in any wrongdoing whatsoever as alleged in the Action, nor should anything in this Agreement be construed as an admission of any wrongdoing or of any matter alleged in the Action; and

WHEREAS, the Parties have voluntarily agreed to the terms of this Agreement and jointly request that it be so-ordered by the Court, as indicated by the signatures appearing below.

IT IS HEREBY AGREED by and between the Parties that:

### Terms and Scope of Settlement Agreement

1. Except as otherwise set forth below, all obligations under the Parties' Settlement Agreement ("Agreement"), shall commence sixty (60) days after the date this Agreement is so-ordered by the Court in which the Action was filed and shall continue for a period of three (3 years from that date (the "Effective Date").

2. This Agreement shall be binding on the Parties and their officers, heirs, successors, assigns, and subsidiaries, unless otherwise specified.

3. Notwithstanding the above or any other term of this Agreement, the specific terms of this Agreement shall apply to the policies, procedures, and operation of all of the retirement

communities operated by Defendants within the United States (collectively the "Facilities" and each individually a "Facility").

## Monetary Relief

4. Defendants shall pay the total sum of Seventy Five Thousand Dollars $75,000.00 in full and final settlement of all Plaintiff's Action and all of its claims, including but not limited to, any claims for damages, attorneys' fees, and costs (the "Settlement Amount"). The costs of all training contemplated in this Agreement shall be paid by Defendants. The costs and fees for any input on or review of any materials provided by Plaintiff are included within the Settlement Amount. As a condition precedent to receiving the Settlement Amount under this Agreement, counsel for Plaintiff is required to deliver a completed IRS Form W-9 to counsel for Defendants via email at jan.hensel@dinsmore.com. The Settlement Amount shall be made payable to Eisenberg & Baum, LLP, IOLA Trust Account. Defendants shall deliver the Settlement Amount to Eisenberg & Baum, LLP, located at 24 Union Square East, Penthouse, New York, New York, 10003. Payment shall be made no later than thirty (30) days after the Court in which the Action was filed has ordered the enforcement of this Settlement Agreement as to the Facility within its jurisdictions and filed same with the Clerk of the Court, provided that counsel for Defendants have received a completed IRS Form W-9 from counsel for Plaintiff at least five business days before such payment.

5. The Parties shall file the Stipulations and Orders of Dismissal with the Court to dismiss the Action. Concurrently with the signing of this Agreement, the Parties shall execute, and Plaintiff shall file, said Stipulation and Order of Dismissal within fifteen (15) days of Defendants' payment of the Settlement Amount on the terms set forth above. Except as provided herein, both sides shall bear their own attorneys' fees and costs.

## General Injunctive Relief

6. Defendants and their employees and agents shall not discriminate against persons on the basis of disability in their admission of residents, in violation of the FHAA, the RA, the ADA, and the ACA on the basis of any auditory disability, including without limitation:
    a. Refusing to provide prospective residents and residents who are deaf or hard of hearing auxiliary services such as American Sign Language ("ASL") interpreters when necessary for effective communication.

7. Defendants shall include the following to their policies, procedures, and operations at the Facilities:
    a. The Facilities shall, within 60 days following the Effective Date, adopt an Affirmative Non-Discrimination Policy ("Policy") that they will not discriminate against current or prospective residents based on auditory or other disabilities under the FHAA.
    b. The Facilities shall not intentionally adopt any policy that has a discriminatory effect on people with auditory or other disabilities under the FHAA.
    c. Defendants shall certify to Plaintiff, within thirty (30) days of the adoption of the Policy, that they have distributed the Policy to current employees at the

2

      Facilities. The Policy shall include language requiring all employees to read and abide by the Policy, and all employees who have contact with residents and prospective residents will acknowledge receipt and reading of the Policy.

d. The Policy will be incorporated into the onboarding documents for new employees who have contact with residents and prospective residents and all such employees will acknowledge receipt and reading of the Policy.

e. Defendants shall create a reasonable accommodation policy and request form ("Request Form") that will allow current and prospective residents to request auxiliary aids and services, such as ASL interpreters.
   i. The Request Form shall be included in admissions packet.
   ii. Current residents shall be notified of the Request Form and given the opportunity to request services within thirty (30) days.
   iii. Supplemental procedures shall be available for those unable to complete the written Request Form.
   iv. All costs associated with reasonable accommodations to be borne by the Facilities, as required by the FHAA.
   v. Accommodations shall be provided to residents, fellow leaseholders, companions, and guests, as required by the FHAA.

f. For any residents making a reasonable accommodation request, a Communication Plan will be updated in the resident's file.
   i. When a reasonable accommodation request is made, staff shall immediately begin an interactive process to determine what auxiliary aids or services would be appropriate.
   ii. The Communication Plan will address the communication needs of the resident regarding auxiliary services, such as ASL interpreters.
   iii. The Communication Plan will alert applicable staff that the resident and/or companion is deaf or hard of hearing, and include information about the mode of communication requested and provided while protecting the resident's privacy, with the written permission of the resident.
   iv. If a resident declines interpreting services after having requested them in writing, the refusal of interpreting services will be documented in the resident's file.
   v. Accommodations, including the use of ASL interpreters, should extend to community activities provided by the Facilities when the resident has reasonably requested such accommodations for effective communication, and when providing such accommodations will not change the fundamental nature of the community activity or create an undue administrative and financial burden. Residents will be informed of the necessary time frame to request Accommodations, as well as how to make a standing request for Accommodations for recurring events or activities.
   vi. The Facilities shall offer qualified interpreters. Interpretation services will be provided for effective communication, in such a manner as to result in effective communication, which may be in person or via electronic means.

3

**Marketing and Communications**

8. If the Facilities use human models for advertising and media, they shall endeavor to depict inclusion of protected classes under the FHAA.

9. Website changes for the parent company and each Facility:
    a. Include the Fair Housing logo and the international symbol for sign language interpretation, to be provided to Defendants by Plaintiff.
    b. Add information concerning accessibility, including for the deaf and hard of hearing.
    c. Add statements that the Facilities comply with all federal, state, and local laws as well as the FHAA, the RA, the ADA, and the ACA.

10. Brochures and other materials:
    a. Create informational materials reflecting services provided to the deaf and hard of hearing, and include the Fair Housing logo and the international symbol for sign language interpretation in such materials.
    b. Each Facility shall place signage at the information desk or at another place in the lobby area informing the public to discuss any disability accommodations with the Admissions Director or Facility Administrator. The signage shall include the international symbol for sign language interpretation and the international symbol for mobility accessibility.

11. The aforementioned changes to the policies, procedures, and operations in Paragraph 4 through 11 shall be adopted within one hundred twenty (120) days of the Effective Date.

**Training:**

12. Over the three (3) year period of the Agreement, the Facilities shall endeavor to conduct periodic training of new employees within ninety (90) days of hire and shall endeavor to conduct training of current employees within 180 days of the completion of the training described in Paragraph 12c. Due to the pandemic, in-person training may not be possible and in such case, the Facilities will distribute materials and inform employees of information via email and other electronic communications.
    a. Any staff who interacts with prospective and current residents or their family members.
    b. The training will include rights afforded to persons with disability under the FHA, training on the needs of persons with disabilities, including deaf and hard of hearing; cultural competency training as it relates to deaf culture and other protected classes; and types of services and assistance that may need to be provided to persons who are deaf or hard of hearing.
    c. Defendants agree to send five (5) management employees from each of Defendants' properties in the State of Ohio, to one (1), 3-hour Fair Housing Act compliance course, taught by the MVFHC. The cost for said compliance

4

        education shall be the sole responsibility of Defendants at the rate of $125.00 per person. All individuals will attend the course by September 30, 2021.

    d. Defendants agree to allow Plaintiff to conduct one (1) fair housing education workshop for existing residents at each of their Ohio properties. Said education workshop will be 90 minutes in length, and Defendants shall be solely responsible for providing a space at each property in which the workshop can be conducted, and promote the workshop together with any and all other activities offered at the community. Defendants shall also be solely responsible for roundtrip mileage from Plaintiff Miami Valley Fair Housing Center's office at 505 Riverside Drive to each community, and a fee of $150.00 per workshop conducted. Given the COVID-19 pandemic, Plaintiff has transitioned all of its educational workshops to virtual meetings using the Zoom Videoconferencing Platform. Until the dangers of the pandemic have been sufficiently addressed through public health measures, Miami Valley Fair Housing Center will continue to conduct education sessions virtually through Zoom or another videoconferencing platform. Defendants shall coordinate with Plaintiffs to facilitate the workshop being conducted for residents of Defendants' properties through said video conferencing platforms (i.e., provide internet connection and a video display on campus where residents can gather (with appropriate safety measures and social distancing) to watch and participate in the workshop. Defendants shall ensure that the video display is sufficiently large enough that all residents who want to participate may do so.

## **Recordkeeping**

13. The Facilities will maintain the following records throughout the term of the Agreement electronically or in paper form:
    a. Certification or signed employee copies that they have read the Policy described in Paragraph 7(a) of this Agreement.
    b. A sample set of photographs depicting the placement of the Fair Housing logo and the international symbol for sign language interpretation sign and a certification of compliance for all of the Facilities.
    c. Copies of the reasonable accommodation Request Forms or written requests for auxiliary aids or services, and documentation as to whether the request was honored, denied, or alternative aids were provided.
    d. Copies of any written complaints related to failure to provide auxiliary aids and services.
    e. Copies of all written policies and forms developed in connection with this Agreement.
    f. Supporting documentation concerning provision of auxiliary aids or services (e.g. interpreter or aid contracts, invoices, receipts, etc.).
    g. Copies of all written policies and forms related to equal housing opportunity, reasonable accommodations, and auxiliary aids and services.

14. Upon reasonable written notice, Defendants will certify to Plaintiff that it has the records described in Paragraph 14 above, no more than one time per calendar year during the term of this Agreement.

### Future Litigation

15. It shall be a condition precedent to Plaintiff's right to file any future claim, cause of action, right of action, or lawsuit against any of the Defendants or Facilities during the three (3) year term of this agreement, Plaintiff shall first have given Defendants written Notice stating with specificity the alleged violation. The parties shall have 60 days to discuss the alleged breach and resolve the matter. After 60 days or as otherwise agreed to by the parties in writing, Plaintiff only then will be allowed to pursue such claim, cause of action, right of action, or lawsuit without restriction. This paragraph shall not apply or be subject to and in no way hinder or prevent MVFHC from assisting a bona fide complainant that contacts MVFHC seeking assistance, and from bringing any type of action against the Defendants in the bona fide's name.

### Releases

16. In exchange for Defendants' agreement to the terms set forth in this Agreement, Plaintiff and its employees, agents, representatives, attorneys, officers, heirs, assigns, or subsidiaries, hereby release, acquit, and forever discharge with prejudice, and subject to the terms of this Agreement, Defendants and the Facilities and each of their parents, successors, predecessors, assigns, subsidiaries and affiliated entities and each of their current and former employees, owners, shareholders, members, agents, trustees, board members, other constituents, insurers, bond holders, and attorneys, from any and all liability, claims, causes of action, rights of action, demands, and obligations (including, but not limited to, claims for costs, expenses, and attorneys' fees), and from any other liability concerning discrimination in admissions or care for prospective residents or residents, through and including the Effective Date. Plaintiff acknowledges and agrees that included in the General Release of claims are any and all claims that have been or may be asserted by Plaintiff or by any other person or entity on Plaintiff's behalf in any action, including in any class or collective action. For avoidance doubt, nothing herein shall in any way encumber or impair or attach to the Facilities and the owners of the Facilities and any successors and assigns thereof and the General Release set forth herein shall be construed as broad as possible to permit and facilitate the future conveyance, financing, leasing and subleasing of any of the Facilities.

17. Plaintiff's release extends to all claims, known and unknown. To the extent that a waiver of such unknown claims must under any laws be explicitly acknowledged and/or waived, Plaintiff understands that such laws give Plaintiff the right not to release existing claims of which Plaintiff is unaware, unless Plaintiff voluntarily chooses to waive this right. Plaintiff specifically and fully waives its rights under all such laws, and elects to assume all risks related thereto.

6

## Administration of Agreement

18. The United States District Court in which the Action was filed shall retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either party, provided that the moving party has fully complied with the notice and cure provision herein in Paragraph 19.

19. It shall be a condition precedent to Plaintiff's, Defendants', or any Facility's right to seek judicial intervention on any alleged violation of this Settlement Agreement that Plaintiff or any moving Facility shall first have given the other party written notice stating with specificity the alleged violation and the specific facts of the alleged breach of the Agreement (the "breach"). If a period of thirty (30) days, or such other time as may be mutually agreed by the parties, from and after the giving of such written notice elapses without the breaching party having cured or remedied such breach to the mutual reasonable satisfaction of the other party or Facility during such thirty (30) day period, the moving party will only then be allowed to pursue judicial intervention. In the case of an alleged violation that cannot be cured within thirty (30) days, the period for remedy or cure shall be extended for a reasonable time (not to exceed an additional thirty (30) days), provided the non-moving party has made and continues to make a diligent effort to effect such a remedy or cure. Any claim of an incurable violation must nonetheless be preceded by the notice and cure provisions set forth in this paragraph.

## Notices

20. Any notice required or permitted under this Agreement shall be provided as follows:

    a. For Plaintiff: Andrew Rozynski, Eisenberg & Baum, LLP, 24 Union Square East, Penthouse, New York, NY 10003
    b. For Defendants: Jan E. Hensel, Dinsmore & Shohl LLP, 191 W. Nationwide Blvd., Suite 300, Columbus, Ohio 43215 and The Ohio Masonic Home, attention: CEO, by registered mail, return receipt requested.

## Severability

21. If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement. The Parties to this Agreement shall consult and use their best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## Miscellaneous

22. This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

7

23. This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

24. The Parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

25. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

_____
The Ohio Masonic Home

_____
The Ohio Masonic Home Benevolent Endowment Foundation, Inc.

_____
Masonic Health Care, Inc.

_____
Miami Valley Fair Housing Center, Inc.

So ORDERED

_____
JUDGE WALTER S. RICE
UNITED STATE DISTRICT JUDGE

8

21625149.1 75529-78